958 F.2d 373
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Clara I. WEAVER, Plaintiff-Appellant,
v.
Caspar WEINBERGER, Defendant-Appellee.
 No. 91-5133.
 United States Court of Appeals, Sixth Circuit.
 March 16, 1992.
 
 Before DAVID NELSON and SUHRHEINRICH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a sex discrimination case filed as a class action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. The plaintiff, Department of Defense employee Clara Weaver, sued the Secretary of Defense for imposing as a condition for promotion a "specialized experience" requirement that tended to exclude women and that was not job-related. She also asserted that supervisors within her department retaliated against her and other women after a co-worker had filed a sex discrimination complaint.
 
 
 2
 A motion for class certification was denied, and Ms. Weaver's individual case was consolidated with one filed by another female employee who had raised similar claims. After a five-day bench trial, the district court (Julia S. Gibbons, J.) found that Ms. Weaver had not established a prima facie case of disparate treatment. Based upon statistical proof, however, the court concluded that the experience requirement was not job-related and had an adverse impact on women. The court subsequently held, nonetheless, that Ms. Weaver had not proved that she herself sustained any monetary damages caused by misconduct on the part of the defendant and that she was not entitled to injunctive relief or attorney fees.
 
 
 3
 The plaintiff has appealed. Finding no error in the denial of monetary and injunctive relief, we shall affirm the judgment insofar as those issues are concerned. The litigation appears to have prompted the defendant to change the experience requirement in some respects, however, and it is not clear to us whether these changes were significant enough from the plaintiff's standpoint to justify a fee award. Accordingly, we shall remand the case for further consideration of the attorney fee question.
 
 
 4
 * A
 
 
 5
 Ms. Weaver was employed by the Defense Department's Defense Industrial Plant Equipment Center. The Equipment Center is responsible for supplying and storing industrial plant equipment destined for use by government contractors. This equipment, referred to as "commodities," is "managed" in the Commodities Division.
 
 
 6
 There are two job classifications in the Commodities Division for people who manage industrial plant equipment; "inventory manager" and "equipment specialist." Inventory managers and equipment specialists do essentially the same work, and a person in either position is commonly called a "commodities manager." The equipment specialist's position is recognized as a better job, however, because it has higher pay and better promotional opportunities. An inventory manager cannot hold a rank in excess of the GS-9 level, while an equipment specialist's GS level can go up to 15.
 
 
 7
 To qualify for an equipment specialist position during the time period relevant here, an applicant had to meet the Office of Personnel Management's mandatory job requirements. Equipment specialists were required to have three years of "general experience" and a degree of "specialized experience" that differed depending on employment level. Specialized experience was described as
 
 
 8
 "experience in an advisory, analytical, technical, professional, or trade and craft capacity which provided a through practical knowledge of industrial plant equipment, such as how to operate, test, repair, modify or rebuild it; where or how to keep and maintain it; where to obtain technical information on it; what supporting parts, training devices or tools to keep with it; what substitute parts may be cannibalized from it; and when to dispose of it. The experience must show that the applicant possesses the skills, knowledges [sic], and abilities required to perform the work in the equipment area at the grade for which the application is made."
 
 
 9
 Thus to meet the specialized experience requirement, an applicant had to have either prior technical experience or prior hands-on experience with industrial plant equipment. Many of the equipment specialists in the Commodities Division had no prior experience with the particular machine they had been assigned to, nor did they inspect, evaluate or repair any of the equipment.
 
 
 10
 When this suit was filed, the Commodities Division had 15 male equipment specialists and no female equipment specialists. (There was one female equipment specialist in another division; she had acquired her job only after filing an EEOC complaint.) Practically all of the men met the specialized experience requirement by virtue of prior hands-on experience with some type of equipment. All of the men had a GS-11 classification.
 
 
 11
 The division had eight inventory managers, none of whom, of course, ranked higher than GS-9. Seven out of the eight were females.
 
 B
 
 12
 Ms. Weaver began working for the federal government in 1956. She was first employed within the Commodities Division as a GS-3 clerk-typist in 1966. After a few weeks, she was promoted to a GS-4 supply clerk. In 1972 she applied for, but failed to receive, appointment to a GS-5 equipment specialist trainee position. The reason given was lack of experience. We are told that she applied for an equipment specialist position several other times between 1972 and 1979, and each time her application was turned down for lack of required experience.
 
 
 13
 In 1979 she was promoted to a GS-5 lead supply clerk. She then applied for a GS-7 equipment specialist position, but was turned down for lack of specialized experience. In February of 1980 she again applied for a GS-7 equipment specialist position; again she was rejected because she did not have the required experience. Some time later she was promoted to a GS-7 inventory manager position.
 
 
 14
 In March of 1981 Ms. Weaver again applied unsuccessfully for a GS-7 equipment specialist position. In July of 1981 she applied unsuccessfully for a GS-9 equipment specialist position. In October of 1981 she applied once again for a GS-7 equipment specialist position, and she was turned down for the same reason--no specialized experience. Finally, in December 1981, she applied for a GS-9 equipment specialist job, with advancement to GS-11, and was turned down because she lacked technical or hands-on experience with plant equipment. Ms. Weaver did not apply for any more equipment specialist positions and continued in the capacity of a GS-7 inventory manager.
 
 
 15
 As an inventory manager, Ms. Weaver performed many of the same tasks as those performed by equipment specialists. She made most of the actual decisions, and her paperwork was approved by supervisory equipment specialists with little or no review. The evidence showed that she performed her job functions well.
 
 
 16
 In May of 1980 Walta Mae Cook, a GS-9 inventory manager in the Commodities Division, applied unsuccessfully for a GS-11 equipment specialist position. Although Ms. Cook had been performing the duties of a GS-11 equipment specialist, she was denied promotion because she failed to meet the specialized experience requirements. An administrative hearing was held in January of 1981 on an informal complaint alleging sex discrimination, and Ms. Weaver represented Ms. Cook before the complaints examiner. The examiner recommended a finding in favor of the employee on Title VII adverse impact and Equal Pay Act theories. The recommendation was rejected, and Ms. Cook filed a lawsuit in federal court. (Her case would later be consolidated with Ms. Weaver's).
 
 
 17
 After the filing of the complaint by Ms. Cook, the "extra duties" that the inventory managers in the Commodities Division had been performing were severely curtailed. Inventory managers were no longer allowed to "manage" commodities. Ms. Weaver's supervisors relieved her of the listings for the class of equipment with which she had worked and placed them on an equipment specialist's desk.
 
 
 18
 In August of 1981 Ms. Weaver received the lowest job evaluation in her federal career. In November of 1981 she was moved from her position as inventory manager and placed in an "unestablished" position. She still continued to perform inventory management duties, but was directed never to sign her own paperwork.
 
 
 19
 In response to the limitation of their duties, Ms. Weaver and the other female inventory managers met with the Chief of the Commodities Division, James Needham, and the Deputy Commander of the Equipment Center, Ed Prince. Mr. Needham indicated that he had been directed to rewrite the job descriptions. Mr. Prince told the women that he had instructed Mr. Needham to rewrite the job descriptions because they had "already had more than they deserved."
 
 
 20
 In April of 1981 Ms. Weaver filed a class discrimination charge with the Equal Employment Opportunity Commission. No administrative relief was granted, and she eventually received a right to sue letter.
 
 
 21
 In January of 1982 Ms. Weaver brought an action against the Secretary of Defense in the United States District Court for the Western District of Tennessee. She filed the suit as a class action on behalf of herself and all other female employees similarly situated. Her complaint alleged that the Equipment Center discriminated against women by the use of a discriminatory job classification system that favored men over women. It also alleged that management had been rewriting job classifications in an effort to conceal and perpetuate the discrimination. Finally, Ms. Weaver claimed that the Equipment Center had retaliated against her and the other women.
 
 
 22
 In April of 1982 the Secretary moved for summary judgment on the discrimination claims, asserting that Ms. Weaver had not exhausted her administrative remedies by meeting with an equal employment opportunity counselor within 90 days following her rejection for a promotion. See 29 C.F.R. § 1613.602. The Secretary also maintained that the retaliation claims had not been exhausted. The court declined to dismiss the discrimination claims because a continuing violation had been alleged. As to one of the claims of retaliation, the court agreed with the Secretary that it had not been exhausted; it was therefore dismissed.
 
 
 23
 After a denial of class certification, Ms. Weaver's individual case proceeded to trial with Ms. Cook's. At the conclusion of the trial the district court held that Ms. Weaver had failed to show disparate treatment, because she had not shown that sexual discrimination predominated over any legitimate reason for the failure to promote her. The court found that experience qualifications had been established by the Office of Personnel Management, not by the Secretary of Defense, and that the Defense Depot Office of Civilian Personnel applied those criteria to Ms. Weaver in rejecting her applications for promotion. Although there was ample proof of discriminatory attitudes among the Equipment Center supervisors, the court found no proof linking these attitudes to the refusals to promote Ms. Weaver.
 
 
 24
 The district court did conclude that the specialized experience requirement had an adverse impact on women, more men than women being able to show hands-on experience with equipment. In reaching this conclusion the district court relief on statistics furnished by the Equipment Center in an administrative hearing. The data showed the number of male and female applicants from 1978 through 1980 who had applied for GS-11 equipment specialist positions but failed to meet the specialized experience requirement. Some 97 percent of the female applicants were rejected on this ground, but only 54 percent of the male applicants were. The court found this datum sufficient to show that the hands-on requirement had a substantial adverse impact on women, based upon a presumption set forth in the Uniform Guidelines on Employee Selection Procedure, 29 C.F.R. § 1607.4(D) (1986). (The guidelines presume an adverse impact if the selection rate is less than 80 percent of that for the most favored group.)
 
 
 25
 The court further found that the specialized experience requirement was not job-related and did not reflect any business necessity; that Ms. Weaver had been subject to retaliation by having her duties reduced following the filing of Ms. Cook's administrative complaint; and that Ms. Weaver was able to show a continuing violation.
 
 
 26
 The court deferred its ruling with respect to the remedy, directing Ms. Weaver and the Secretary to use evidence from the record to make presentations regarding appropriate relief. The court also indicated that Ms. Weaver was entitled to attorney fees and that she should submit evidence to support her claims for such fees.
 
 
 27
 Ms. Weaver requested relief in the form of appointment to a GS-11 equipment specialist position, the job for which she had been turned down in April of 1981. She also requested a further promotion of one GS level, plus over $52,700 in back pay and interest and approximately $33,700 for attorney's fees. Finally, she asked that the government be required to rewrite the equipment specialist job description.
 
 
 28
 The Secretary maintained that Ms. Weaver was not entitled to any relief because she could prove no damages flowing from the specialized experience requirement. He argued that the proof at trial concerned only the GS-11 equipment specialist position, a position for which Ms. Weaver was not eligible under 5 C.F.R. § 300.602(b) because she had not served at least one year in a GS-9 position.
 
 
 29
 The district court ultimately issued an order denying Ms. Weaver any back pay. The court agreed with the Secretary that the only proof with respect to the adverse impact claim had related to the GS-11 position, and that during the relevant time periods Ms. Weaver had not been eligible for promotion to that level. The court therefore concluded that Ms. Weaver had failed to prove any connection between her rejection for a GS-11 equipment specialist position and the specialized experience requirement. The court went on to hold that although Ms. Weaver had established a claim for retaliation insofar as the reduction of her duties was concerned, she was entitled to no monetary relief in that regard because she had not suffered any financial loss. The court acknowledged that injunctive relief was warranted, and instructed the Secretary to submit a plan within 30 days to correct the experience requirement.
 
 
 30
 The Secretary argued that Ms. Weaver had no standing to seek injunctive relief because she had not show that the specialized experience requirement affected her. The district court agreed, and injunctive relief was denied in a subsequent order. The court also noted that if it were to issue injunctive relief, it would consist only of approval of the Secretary's plan. (No such order was in fact entered.) Finally, the court ruled that Ms. Weaver was not entitled to attorney fees because she was not a prevailing party. This appeal followed.
 
 II
 
 31
 To establish a prima facie disparate treatment case, "[t]he plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The plaintiff must show "that the adverse employment decision would not have been made 'but for' her sex." Gutzwiller v. Fenik, 860 F.2d 1317, 1325 (6th Cir.1988). The district court's findings on such factual questions are subject to review under a clearly erroneous standard. Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 374 (6th Cir.1984).
 
 
 32
 Here the district court found ample evidence of discriminatory attitudes on the part of Equipment Center supervisory personnel, but found also that there was no causal link between these discriminatory attitudes and Ms. Weaver's rejection for promotion. The evidence, as the district court interpreted it, showed that Ms. Weaver's application for promotion could not have been accepted in any event because she did not meet the mandatory requirements of the Office of Personnel Management.
 
 
 33
 Ms. Weaver argues that the district court's findings are in error because the supervisors at the Equipment Center worked "hand in glove" with the Office of Civilian Personnel "so that the act of one [was] the act of both." To support her position, she contends that the Equipment Center influenced job descriptions, that it found ways for men to get equipment specialist positions, and that the experience requirement was waived when necessary.
 
 
 34
 The hands-on experience requirement, however, had been in place before the supervisors indicated that the job descriptions would be rewritten. So had the requirement for prior service at a GS-9 level. The supervisors had no special influence over the stated requirements for the equipment specialist position, moreover; the specialized experience requirement applied not only to equipment specialist positions in the Commodities Division, but to all federally classified equipment specialist jobs. There was no evidence to support the contention that the Equipment Center supervisors had any influence over waiving job requirements.
 
 
 35
 Title VII not only prohibits overt discrimination, but also employment practices that may be neutral on their face but discriminatory in operation. Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971). "A prima facie case of violation of the Act may be established by statistical evidence showing that an employment practice has the effect of denying the members of one [sex] equal access to employment opportunities." New York City Transit Authority v. Beazer, 440 U.S. 568, 584 (1978).
 
 
 36
 Ms. Weaver attempted to prove an improper adverse impact with statistical evidence concerning the number of male and female applicants for the GS-11 equipment specialist who failed to meet the specialized experience requirement. But the district court concluded that this evidence could avail Ms. Weaver nothing because she could not prove any damage; never having held a job above the GS-7 level, she was simply not eligible for a GS-11 position.
 
 
 37
 The plaintiff argues that her statistical evidence pertained to all equipment specialist positions and that she had sought promotions to levels in addition to the GS-11 level. But we do not read the evidence as saying anything about the impact of the experience requirement on women at a GS-7 level. Applicants for GS-11 jobs were required to have at least three years of specialized experience, while applicants for the GS-7 and 9 levels needed only one or two years respectfully. We do not know how many women and how many men were actually denied GS-7 or GS-9 equipment specialist positions because they lacked the specialized experience. Moreover, Ms. Weaver was seeking to be promoted to a GS-11 level for which she was undeniably ineligible quite apart from the specialized experience requirement.
 
 
 38
 Ms. Weaver asserts that she ought to have been allowed to present evidence on (1) the number of women who sought machine shop jobs in 1954, and (2) retaliation in delaying her application for disability retirement. These evidentiary rulings cannot be set aside absent an abuse of discretion, United States v. Hickey, 917 F.2d 901, 904 (6th Cir.1990), and we can find no abuse of discretion here.
 
 
 39
 Finally, Ms. Weaver contends that an attorney fee should have been awarded because the district court found that there had been a retaliatory reduction in her job duties. We do not believe that this finding alone would entitle Ms. Weaver to an attorney fee, because she was not injured by the reduction and she received no redress therefor. The record does indicate, however, that the litigation prompted the defendant to take a series of actions designed to correct the discriminatory impact of the experience requirement. The changes are outlined in an "agency plan" filed on August 30, 1988, pursuant to an order on relief dated June 15, 1988. If the changes effected a change in the legal relationship between the plaintiff and the defendant, and if the plaintiff realized more than an insignificant benefit from the changed relationship, the plaintiff would have "crossed the threshold to a fee award of some kind." Texas State Teachers Assn. v. Garland Independent School District, 489 U.S. 782, 792 (1989). The district court found that the plaintiff could not be considered a prevailing party, but made no specific findings as to whether the plaintiff derived any significant benefit from the changes described in the defendant's filing of August 30, 1988.
 
 
 40
 Accordingly, denial of an attorney fee is VACATED and the case is REMANDED to the district court for further consideration of the attorney fee question. In all other respects the judgment is AFFIRMED.