**UNITED STATES of America, Plaintiff–Appellee Cross–Appellant,**

v.

**Quinn HICKEY, Defendant–Appellant Cross–Appellee.**

Nos. 89–1459, 89–1535.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 18, 1990.

Decided Oct. 24, 1990.

Jennifer J. Peregord (argued), Office of the U.S. Atty., Detroit, Mich., Janet L. Parker, Asst. U.S. Atty., Bay City, Mich., for plaintiff-appellee cross-appellant.

C. Michael Gorte (argued), Bay City, Mich., for defendant-appellant cross-appellee.

Before KEITH and MILBURN, Circuit Judges; and THOMAS, Senior District Judge *.

MILBURN, Circuit Judge.

This case involves an appeal by Quinn Hickey from his jury conviction in a drug conspiracy case and a cross-appeal by the government of the sentence imposed. Specifically, the government appeals the district court's refusal to impose a fine. For the reasons that follow, we affirm the conviction; however, we vacate the sentence and remand for resentencing.

I.

A.

Hickey, along with eighteen co-defendants, was charged with numerous counts of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 846, and use of a communication facility to facilitate

a crime in violation of 21 U.S.C. § 843(b). A jury trial commenced on September 8, 1988, and several of Hickey's co-defendants, including Bayron Moreno, were found guilty. However, the jury was unable to reach a verdict as to Hickey, and the court declared a mistrial as to him. Hickey was retried and found guilty on one of the conspiracy charges and two of the communications charges.

B.

An investigation of drug trafficking in the Saginaw, Michigan, area soon centered on Jack Ventimiglia as his residence appeared to be the main terminal for considerable cocaine distribution. Ventimiglia was arrested and, pursuant to a plea agreement, testified for the government against several of his associates including Quinn Hickey.

Ventimiglia is a self-confessed cocaine addict, and his testimony at the trial was characterized by the district court as the words of a "loose cannon." In a lengthy cross-examination, defense counsel was able to expose Ventimiglia's cocaine addiction, his claimed lack of memory, his uncertainty as to details, and several inconsistencies in his testimony. In ruling on the defendant's motion for a judgment of acquittal, the district court stated that Ventimiglia's testimony alone would not support a guilty verdict; however, the district court denied the motion because the government had introduced, apart from Ventimiglia's testimony, "substantial circumstantial evidence that would tend to support the fact [that] Hickey was, in part, a seller." J.A. 122.

Following Hickey's conviction, a presentence investigation report ("PSI") was prepared. The PSI showed that Hickey had assets totaling $260,000. However, a spendthrift trust established by Hickey's father and designed to vest on Hickey's thirtieth birthday comprised approximately $200,000 of Hickey's assets.

---

* Honorable William K. Thomas, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

Hickey did not contest the PSI with regard to the amount of his assets except to object that the PSI had inflated his net worth by $500. Hickey contended that his "total assets and net worth should read $250,500."

At the sentencing hearing, the district court stated that it found no legal basis for departing from the United States Sentencing Guidelines ("Guidelines"). However, the court declined to impose a fine reasoning that a man of Hickey's age facing ninety-seven months imprisonment did "not have the ability to pay a large fine."

The issues presented in this appeal are (1) whether the district court should have excluded the testimony of Ventimiglia and other prosecution witnesses on the basis of lack of personal knowledge, *i.e.*, whether inconsistencies in their testimony showed that they were prevented by their drug addiction from obtaining personal knowledge of the events to which they testified; (2) whether prosecutorial misconduct rendered the trial unfair; and (3) whether the district court erred in refusing to include a fine as part of Hickey's sentence.

## II.

### A.

■ Hickey argues that the district court committed reversible error in allowing the jury to hear and consider the testimony of Ventimiglia and other prosecution witnesses.[1] In considering this argument, we again note that a trial judge's evidentiary rulings will not be reversed absent a clear showing of abuse of discretion. *See United States v. Rios*, 842 F.2d 868, 872 (6th Cir.1988) (per curiam), *cert. denied*, 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989).

After pointing out Ventimiglia's drug addiction and inconsistencies in Ventimiglia's testimony, Hickey argues that there was a "total lack of sufficient or supportive evidence to substantiate the findings that these witnesses had personal knowledge of

the critical events in this prosecution upon which to base their testimony." Appellant's Brief at 15. This is not the first case in which we have faced an argument that the testimony of Jack Ventimiglia should be excluded. In *United States v. Moreno*, 899 F.2d 465 (6th Cir.1990), we rejected an argument by Hickey's co-defendant in the first trial that inconsistencies in Ventimiglia's testimony, in light of his admitted drug addiction, showed that he was incompetent to testify.

In *Moreno* we relied upon *United States v. Ramirez*, 871 F.2d 582 (6th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 127, 107 L.Ed.2d 88 (1989), a case which recognized that in some cases the ability of a witness might be so impaired that he cannot satisfy the personal knowledge requirement of Federal Rule of Evidence 602. *Ramirez*, 871 F.2d at 584. Hickey's argument is an attempt to capitalize on the opening left by *Ramirez*. What we did not mention in *Ramirez* was the fact that the threshold of Rule 602 is low.

■ Rule 602 provides, in relevant part, that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about. Weinstein, *Weinstein's Evidence* ¶ 602[02], at 602–8 to 11 (1988) (citing, *e.g.*, *United States v. Davis*, 792 F.2d 1299, 1304–05 (5th Cir.), *cert. denied*, 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986); *United States v. Evans*, 484 F.2d 1178, 1181–82 (2d Cir.1973); *United States v. Fernandez*, 480 F.2d 726, 739 (2d Cir.1973); *United States v. Borelli*, 336 F.2d 376, 392 (2d Cir.1964), *cert. denied*, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965); *Auerbach v. United States*, 136 F.2d 882 (6th Cir.1943); *United States v. Owens*, 699 F.Supp. 815, 817–19 (C.D.Cal. 1988); *United States v. Smith*, 592 F.Supp.

---

**1.** Although Hickey mentions other government witnesses in his arguments, Ventimiglia's testi-

mony is the primary target of Hickey's attack.

424, 441 (E.D.Va.), *aff'd*, 750 F.2d 1215 (4th Cir.1984)).

Despite the fact that Ventimiglia's testimony may have been, in large part, unbelievable to some and in spite of the possibility that his perception was sometimes impaired, a reasonable or rational juror could believe that Ventimiglia and the other prosecution witnesses perceived the course of events to which they testified. Accordingly, we hold that the district court did not abuse its discretion in permitting Ventimiglia's testimony or the testimony of the other prosecution witnesses.

### B.

Hickey next complains that during closing argument, counsel for the government, Ms. Parker, committed prejudicial prosecutorial misconduct by making several prejudicial comments. "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). "Even if certain comments are found to be inappropriate, they alone [will] not justify a reversal of a criminal conviction obtained in an otherwise fair proceeding. Rather, the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *United States v. Hitow*, 889 F.2d 1573, 1579 (6th Cir.1989) (citation omitted). In this examination, "a reviewing court may consider, along with other factors, the potential of the remarks to prejudice the defendant or confuse the jury and the strength of proof against the defendant." *United States v. Castro*, 908 F.2d 85, 89 (6th Cir.1990) (citing *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir.1982); *United States v. Leon*, 534 F.2d 667, 679 (6th Cir.1976)).

The prosecutor's statement during summation that "Quinn Hickey is actively involved in dealing cocaine," was, taken in context, not an opinion of personal belief but a permissible argument based on the evidence. *See Moreno*, 899 F.2d at 468. References to the significance of a "beeper" carried by Hickey are also properly characterized as a discussion of the evidence. *Id.* Ms. Parker's single reference to Mr. Hickey as "Mr. Cocaine" reveals in context that it was no more than a slip of the tongue. Arguments that Ventimiglia's log of dealings with Hickey did not reflect the full volume of Hickey's transactions were supported by Ventimiglia's testimony. Ms. Parker's references during closing argument to illegal transactions between Hickey and Joel Voltz at the Hickey residence were also supported by the testimony of Ventimiglia. An argument that Don Ball moved his cocaine operation to the residence of Hickey was supported by the testimony of another prosecution witness, Steve Jastrzemski.

Hickey also argues that Ms. Parker raised a "false issue" concerning a heat sealer and in effect testified that a plastic bag containing drugs could be sealed with "an iron or clip." However, the record reveals that the prosecutor's statements were invited by the attempt of Hickey's counsel to suggest to the jury that the absence of a "heat sealer" at Hickey's residence proved his innocence. The Supreme Court has recognized that in considering the whole record, it is appropriate to consider whether, and to what extent, a prosecutor's improper argument is invited. *Young*, 470 U.S. at 11–12, 105 S.Ct. at 1044–45. Thus, even if a prosecutor's suggestion that a drug dealer can seal a plastic bag with something other than a "heat sealer" would ordinarily be seen as an impermissible comment, the suggestion in this case was invited and little, if any, prejudice resulted to the defendant.

Finally, Hickey notes that the prosecutor argued that his purchases from Ventimiglia came "close to ten percent of [Ventimiglia's] total volume of sales." It is true that the prosecutor's estimate was incorrect (the correct figure was nearer five percent); however, it is clear from the prosecutor's argument that the figure was

presented as an estimate, and that the jury was invited to "figure out" the correct percentage. Since the jury could easily have arrived at the correct percentage, and since the distinction between five and ten percent was largely insignificant for the purposes of the conviction, the prosecutor's miscalculation did not undermine the fairness of the trial.

From the above discussion, it follows that most of the complained of comments were within the realm of permissible argument. To the extent that certain comments can be construed as inappropriate, we hold that they did not amount to prejudicial error.

### C.

■ The final issue we address concerns the district court's refusal to impose a fine on the defendant upon concluding that the defendant was unable to "pay a large fine." The finding that Hickey was unable to pay a fine is a factual finding subject to the clearly erroneous standard of review. *See United States v. Hays*, 899 F.2d 515, 518 (6th Cir.1990); 18 U.S.C. § 3742(e).

■ Hickey points out that the government failed to raise an objection at the district court level. The government recognizes that generally an appellate court will not pass on an issue not raised below, but argues that its failure to raise the issue is excused here because it had no reason to suspect that a fine would not be imposed until it was too late, *i.e.*, the sentence had already been imposed. The government further argues that it was discouraged from objecting by a statement of the district judge that he was going to make his findings and then leave the matter for appeal.

The defendant relies upon *United States v. Fritsch*, 891 F.2d 667 (8th Cir.1989), for the proposition that the government waived its right to challenge the sentence; however, *Fritsch* is not factually similar enough to this case to be persuasive. In *Fritsch* the defendant acknowledged in a prior plea agreement the applicability of the Sentencing Guidelines and the applica-

ble sentence range. On appeal, however, he tried to challenge the validity of the Sentencing Guidelines. *Fritsch*, 891 F.2d at 668. The Eighth Circuit found waiver.

Other cases suggest that waiver should not be found where there is an explicit grant of authority for challenging a sentence, *United States v. Hill*, 887 F.2d 266 (6th Cir.1989) (unpublished opinion) (explicit grant in 18 U.S.C. § 3742(a)); or where the district court fails to provide an opportunity for objections after pronouncement of sentence, *United States v. Jones*, 899 F.2d 1097 (11th Cir.1990); or where the sentence imposed is illegal, *United States v. Vance*, 868 F.2d 1167 (10th Cir.1989). *See also United States v. Shorteeth*, 887 F.2d 253, 255 (10th Cir.1989) (no waiver of objection where district court, in essence, breached a plea agreement by considering, in sentencing, drugs revealed pursuant to a plea agreement).

Since 18 U.S.C. § 3742(b)(3) explicitly provides for an appeal by the government where the sentence imposed is "less than the sentence specified in the applicable guideline range to the extent that the sentence includes a lesser fine," and since we are not convinced that the government had an opportunity to object following the pronouncement of sentence, we will not find that the government waived its objection. Thus, we proceed to the merits of the government's argument that the district court erred by refusing to impose a fine.

We first note that the controlling statutory and Guideline language in this case is mandatory rather than permissive. "The court *shall* impose a sentence of the kind, and within the range, referred to [in the guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b) (emphasis added); *see also United States v. Rodriguez*, 882 F.2d 1059, 1065–68 (6th Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990). The Guide-

lines in turn provide in section 5E4.2,[2] that "[e]xcept as provided in subsection (f) below, the court *shall* impose a fine in all cases." (Emphasis added).

■ Subsection (f) of section 5E4.2 allows the court to impose a lesser fine or waive the fine entirely "[i]f the defendant establishes that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the preceding provisions, or (2) imposition of a fine would unduly burden the defendant's dependents." From the above provisions it follows that the district court was bound to impose a fine within the range specified by the Guidelines unless there were valid grounds for departing from the Guidelines or a valid finding that the defendant fit within subsection (f). See *United States v. Pippin*, 903 F.2d 1478, 1483–84 (11th Cir. 1990).

■ Since the district court found no basis for departing from the Guidelines, the refusal to impose a fine must stand or fall upon the finding that Hickey was unable to pay a fine. Consequently, the issue becomes whether the district court's finding of an inability to pay was clearly erroneous.

The Sentencing Guidelines place the burden on the defendant to prove that he is unable to pay a fine. Guidelines § 5E4.2(f); *United States v. Perez*, 871 F.2d 45, 48 (6th Cir.), *cert. denied*, ⸺ U.S. ⸺, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989); see *United States v. Doyan*, 909 F.2d 412, 414 (10th Cir.1990) (fine should be punitive and fine of $32,291.92 not an abuse of discretion though it constitutes "a significant financial burden"). In his brief, Hickey acknowledges that he did not present proof to the district court that he was unable to pay a fine. Appellant's Brief at 27.

Moreover, the uncontested evidence shows that Hickey's net worth was $250,-500. It is true that approximately $200,000 of Hickey's assets consisted of the proceeds of a spendthrift trust; however, the fact that Hickey did not have the cash in hand to pay a fine is not determinative. *Perez*, 871 F.2d at 48 (defendant must show that he is unable and unlikely to become able). Even if the trust is protected from creditors, there is no reason from this record to believe that proceeds of the trust would not have added to Hickey's ability to pay a fine. See *United States v. Hays*, 899 F.2d 515, 518 (6th Cir.1989) ("court must consider ... 'earning capacity and financial resources'"); *United States v. Fabregat*, 902 F.2d 331, 334 (5th Cir.1990) (wealth of defendant's family properly considered); *see also United States v. Stafford*, 896 F.2d 83, 84 (5th Cir.1990) (conditional offer of money from parents could be considered in determining ability to pay restitution).

Furthermore, even if the trust were completely ignored, Hickey's uncontested net worth would still be above $50,000. Under section 5E4.2(c)(3) of the Guidelines, the minimum fine for a person with Hickey's offense level (30) was $15,000. We see nothing in the record to indicate that Hickey's estate could not be applied toward at least the minimum fine. It follows that the district court's finding that defendant was unable to pay a fine was clearly erroneous. Consequently, the district court erred by not imposing a fine within the range specified in the Guidelines.

### III.

Accordingly, for the reasons stated, the judgment of conviction is AFFIRMED; however, the sentence is VACATED and the case is REMANDED to the district court for resentencing with instructions to impose a fine within the range specified in the Sentencing Guidelines.

■

**2.** Effective November 1, 1989, § 5E4.2 of the Guidelines was renumbered as § 5E1.2.