963 F.2d 374
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mason KNABE, Defendant-Appellant.
 No. 91-4044.
 United States Court of Appeals, Sixth Circuit.
 May 28, 1992.
 
 Before DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction in a counterfeit securities case. The defendant contends that the district court erred in admitting evidence concerning (1) a prior transaction involving counterfeit stock certificates, and (2) the defendant's possession of stock certificates issued by another company but resembling the counterfeit securities in appearance. Not finding the defendant's arguments persuasive, we shall affirm the judgment of the district court.
 
 
 2
 * In December of 1989 defendant Mason Knabe sent three purported APL Corporation stock certificates to co-defendant Edward L. Ohlson in Cleveland, Ohio. The certificates, which bore the name of Ronald Rubin, represented a total of approximately 29,000 shares of common stock with an estimated value of approximately $127,000.
 
 
 3
 To satisfy a business debt, Ohlson deposited the stock in a brokerage account maintained by Philip Tutolo. Soon thereafter Ohlson asked Tutolo to take out a margin loan, using the stock as collateral, and turn the proceeds over to him to help him wrap up a business deal in Denver. Tutolo agreed.
 
 
 4
 Tutolo borrowed about $75,000, and all but $9,000 (which he kept out for himself) was transferred to an account maintained by Ohlson. Upon receipt of the funds, Ohlson wired $28,000 to an account maintained by defendant Knabe in Orlando, Florida.
 
 
 5
 In February of 1990 APL stock began to decline in value. Tutolo received a margin call from his brokerage, and he instructed the firm to sell the stock. The firm thereupon sent the certificates to APL's transfer agent. The agent determined that the certificates were counterfeit and returned them to the brokerage firm.
 
 
 6
 The firm got in touch with Mr. Tutolo, told him that the stock certificates were counterfeit, and demanded that he repay the loan and other expenses. When the money was not forthcoming, the firm sold off other stock in the account and sought a judgment against Tutolo for the remaining balance.
 
 
 7
 A 19-count federal indictment was ultimately returned against Knabe, Ohlson, and two other individuals. Count 17 (the only one involving Knabe) charged that Knabe made, uttered, possessed, and caused to be made, uttered, and possessed, counterfeit securities with intent to deceive, in violation of 18 U.S.C. §§ 2 and 513.
 
 
 8
 Prior to trial Mr. Knabe filed a motion in limine requesting exclusion of evidence concerning another counterfeit securities transaction. In this transaction--which occurred four months before he sent the counterfeit certificates to Ohlson--Knabe had deposited four purported APL Corporation stock certificates with an Orlando securities firm. He had then borrowed money from the firm, using the stock as collateral. In November of 1989 the stock declined in value, and the firm discovered that the certificates were counterfeit when it tried to have the securities sold. Knabe denied knowing that they were counterfeit. Denying the motion in limine, the district court allowed evidence of these facts to be admitted at trial.
 
 
 9
 Also admitted, over objection, was evidence that Knabe was the owner of certain certificates representing stock in Fun Time International, Inc. Although there was no contention that these certificates were counterfeit, the government argued that they had served as a physical model for the counterfeit APL certificates. The borders on both issues were nearly identical, while the border on genuine APL certificates did not resemble those on the Fun Time certificates.
 
 
 10
 Mr. Knabe took the stand in his own defense. He testified that the APL certificates that he had deposited with the Florida securities firm had previously belonged to his father and had been found by his mother in the attic in March of 1989. He said that he took the certificates to the Orlando firm at the urging of his mother and without any knowledge that they were not genuine.
 
 
 11
 As to the APL stock certificates involved in the offense for which he was being tried, Mr. Knabe testified that he obtained them from a man named Ronald Rubin in connection with a prospective loan from Ohlson. Knabe said he was unaware that Ohlson deposited the certificates in Tutolo's account, which was contrary to their loan agreement.
 
 
 12
 The jury found Mr. Knabe guilty, and he was sentenced to 15 months imprisonment and 3 years of supervised release. This appeal followed.
 
 II
 
 13
 Mr. Knabe contends that the district court erred in admitting evidence of the first transaction involving counterfeit APL stock, and he asserts that it was error to admit the evidence concerning his Fun Time stock.
 
 
 14
 A district court's evidentiary rulings on relevancy will not be reversed unless there has been an abuse of discretion. United States v. Hickey, 917 F.2d 901, 904 (6th Cir.1990). The test for abuse of discretion is whether the reviewing court has "a definite and firm conviction that the trial court committed a clear error of judgment." Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989).
 
 
 15
 We see no clear error of judgment here. Under Rule 404(b), Fed.R.Evid., evidence of prior bad acts can be admitted where relevant to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." "To be relevant, 'the evidence must relate to a matter which is "in issue," and must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried.' " United States v. Feinman, 930 F.2d 495, 499 (6th Cir.1991), quoting United States v. Blankenship, 775 F.2d 735, 739 (6th Cir.1985) (citations omitted).
 
 
 16
 In the case at bar the government had to prove that the defendant used the securities with "intent to deceive another person." See 18 U.S.C. § 513. The defendant maintained that he did not know the certificates were counterfeit and had not sought to defraud anyone. Evidence of the prior APL stock transaction was highly pertinent in this connection, because it tended to show knowledge, intent, and a common plan or scheme to defraud. In both instances similar counterfeit stock certificates were used in essentially the same way.
 
 
 17
 We cannot say that the evidence of the prior transaction was unfairly prejudicial. "A district court is granted 'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." United States v. Vance, 871 F.2d 572, 576 (6th Cir.), cert. denied, 493 U.S. 933 (1989). That discretion was not abused by the district court here.
 
 
 18
 The evidence could also have been admitted, moreover, as being directly related to the charged offense. Mr. Knabe testified at trial that he sent the stock certificates to Ohlson in order to get a loan that would enable him to avoid having to sell the APL stock deposited with the Orlando firm in June. A reasonable jury could have concluded that Knabe wanted the loan to forestall the discovery, in the course of a sale, that the stock certificates were counterfeit.
 
 
 19
 As to the evidence regarding the Fun Time stock, it was relevant to prove Knabe's guilty conduct in connection with the counterfeiting of the APL certificates. Because it was shown that the borders on the Fun Time certificates matched those on the counterfeit APL stock, but not those on the genuine article, the evidence was clearly probative and proper.
 
 III
 
 20
 Knabe also argues that the introduction of evidence of the prior transaction in counterfeit stock constituted a prejudicial variance or an amendment to the indictment. The argument is without merit.
 
 
 21
 An amendment occurs when the prosecutor or the court alters the charging terms of an indictment. United States v. Atisha, 804 F.2d 920, 927 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987). A variance occurs when the evidence offered at trial differs materially from the facts stated in the indictment. Id. Here, in connection with the transaction involving Ohlson and Tutolo, the defendant was charged with making, uttering, and possessing counterfeit securities and causing the same to be made, uttered, and possessed with the intent to deceive. The evidence to which Knabe objects neither altered nor changed the charging terms of the indictment, and, as explained above, it tended to prove the offense with which he was charged.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation