common sense when he gave his opinion as to the ultimate issue, and the jury was informed that it could accept or reject the expert's testimony, as it could with any other witness.

We conclude that a properly qualified expert may testify that, in his opinion, a vehicle was manufactured outside the state where it was eventually sold, when an essential element of the crime was movement of the vehicle in interstate or foreign commerce. Accordingly, the district court did not abuse its discretion in allowing the expert to testify that, in his opinion, the victim's vehicle had been manufactured in Japan and imported to Tennessee.

## III. CONCLUSION

For the foregoing reasons, the judgments of the Honorable Jon P. McCalla of the United States District Court for the Western District of Tennessee are **AFFIRMED.**

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0230P (6th Cir.)
File Name: 01a0230p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

       *v.*

DELORIS GLOVER (99-6005)
and TIMOTHY MCDONALD
(99-6009),
       *Defendants-Appellants.*

Nos. 99-6005/6009

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-20230—Jon Phipps McCalla, District Judge.

Argued: June 5, 2001

Decided and Filed: July 20, 2001

Before: KEITH, SILER, and CLAY, Circuit Judges.

———————

### COUNSEL

**ARGUED:** April R. Ferguson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant in 99-6005. William C. Anderson, Jr., ANDERSON LAW

OFFICE, Memphis, Tennessee, for Appellant in 99-6009. Stuart J. Canale, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** April R. Ferguson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant in 99-6005. William C. Anderson, Jr., ANDERSON LAW OFFICE, Memphis, Tennessee, for Appellant in 99-6009. Stuart J. Canale, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

————————

## OPINION

————————

DAMON J. KEITH, Circuit Judge. In these consolidated cases, Timothy McDonald and Deloris Glover appeal their convictions for carjacking and carrying firearms during a crime of violence. For the reasons that follow, we AFFIRM.

## I. BACKGROUND

On August 4, 1998, a carjacking took place in the parking lot of a pawn shop in Memphis, Tennessee. The pawn shop maintained several security cameras focused both on the parking lot and inside the store, and so the robbery was captured on video.

The victim, Patricia Ayers, drove her 1992 Acura Integra automobile into the parking lot of the pawn shop and entered the store. Thereafter, a vehicle driven by McDonald, with Glover in the passenger seat, also pulled into the parking lot. McDonald backed the car into a parking space, and the two defendants entered the pawn shop. While looking at merchandise at the jewelry counter, Ayers noticed the defendants "hovering" around her and leaning close to her causing her to move. Ayers testified that, at the time, she thought nothing of the defendants' conduct.

The government argues that only an expert, such as Agent Zimmer, has the ability to interpret VIN numbers to determine the place of manufacture of the vehicles. The government contends that, had Agent Zimmer only been permitted to present records, the jury would have been unable to interpret the VIN numbers to determine the place of manufacture of the victim's vehicle. The government also notes that the cautionary instruction by the court reduced any possible prejudice to the defendants.

Agent Zimmer's testimony did not usurp the function of the jury; rather, his testimony was permissible as an expert opinion to help the jury determine a fact in issue. *Cf. United States v. Monus*, 128 F.3d 376, 386 (6th Cir. 1997) (holding that expert testimony of IRS agent regarding tax liability did not usurp the function of the jury as agent did not give her opinion about the guilt of the defendant). Other courts have held that the government may use expert testimony to prove the interstate nexus element of a weapons charge brought pursuant to 18 U.S.C. § 922. *See, e.g., United States v. Corey*, 207 F.3d 84, 88-89 (1st Cir. 2000) (noting that an expert may testify that a weapon was manufactured in one state and sold in another, and thus to state their opinion as to that issue); *United States v. Privett*, 68 F.3d 101, 104 (5th Cir.1995) (holding that "[p]roof of the interstate nexus to the firearm may be based upon expert testimony), *cert. denied*, 517 U.S. 1226 (1996); *United States v. Dunn*, 946 F.2d 615, 618 (9th Cir.1991) (holding that an expert may testify regarding the place of manufacture of a weapon in order to establish whether the weapon traveled in interstate commerce); *United States v. Ware*, 914 F.2d at 1002-03 (7th Cir. 1990) (holding that the district court did not abuse its discretion in allowing expert to testify as to the place of manufacture of weapon, since his testimony could have been useful to the jury to determine whether the weapon had traveled in interstate commerce and court gave a limiting instruction). The reasoning of those courts is applicable here. The ultimate decision as to whether the victim's car had traveled in interstate or foreign commerce remained within the province of the jury. The expert was only drawing on

expertise involves knowing how to read a VIN number and determine certain information about the vehicle from that number.

Glover objected to Agent Zimmer being qualified as an expert, but the district court overruled her objection. The court received Agent Zimmer as an expert, pursuant to Federal Rule of Evidence 702,[2] in the area of manufacture of vehicles and vehicle parts. The court then gave a cautionary instruction to the jury that it was the jury's role to determine how much weight to give the testimony of any witness, and that the jury did not have to accept the testimony of the expert. Agent Zimmer then testified that he studied the VIN number from the victim's car, and determined that the vehicle had been manufactured in Japan and was later transported to a dealership located in Memphis, Tennessee.

On appeal, Glover contends that the admission of Agent Zimmer's testimony on an element of the crime was prejudicial. She argues that Agent Zimmer's conclusion that the victim's car was manufactured in Japan, and had therefore necessarily traveled in foreign commerce, should have been left for the jury to determine. Glover contends that Agent Zimmer usurped the role of the jury by substituting his conclusion for their own regarding the existence of the interstate nexus element of the crime. Glover contends that, even though the court gave the jury a limiting instruction, *i.e.*, that they were free to disregard the expert's conclusion, the jury did not feel free to consider the evidence on their own, and were forced to either accept or reject the expert's conclusion. Glover contends that Agent Zimmer's testimony should have been limited to presentation of records from which the jury could draw their own conclusions.

---

[2]Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702.

The defendants left the store, followed shortly thereafter by Ayers. Ayers went to her vehicle and sat in the driver's seat. Before she could close her door, Glover forced her way into the door of Ayers's vehicle, and said to Ayers "give me a light, bitch." (J.A. at 105). Ayers pushed in her car's lighter and handed it to Glover. Glover lit her cigarette, and then handed the lighter to McDonald, who had approached Ayers's car from the rear. McDonald lit his cigarette, gave the lighter back to Ayers, raised up his shirt to reveal a handgun, and said to Ayers "drop your money, bitch." (J.A. at 105). McDonald then put the gun to the back of Ayers's head and again told her to drop her money. Ayers dropped the three dollars she was holding to the ground, and began pleading for her life.

Glover put her hand over Ayers's mouth, and told her to be quiet and calm down. Ayers calmed down, but continued to plead for her life. The defendants told Ayers to give them her wedding rings, and McDonald eventually took them off Ayers himself. McDonald handed the rings to Glover, and then told Ayers, still at gunpoint, to open all the containers in her car and show him the contents.

After Ayers had complied, Glover said to McDonald "do what you have to do" and walked to and entered the defendants' car. (J.A. at 110). Glover sat in the passenger's seat. McDonald stated to Ayers that he did not believe that she did not have anything of value in the car, and told her to move into the passenger's seat so that he could take her somewhere. Ayers began pleading and begging for her life, and started to get out of the car. McDonald told her that if she didn't get back in the car he would shoot her in the back of her head. Ayers slowly backed away from McDonald, then turned and ran toward the door of the pawn shop. She testified that she knew that if she let McDonald drive her from the scene she would be killed. Therefore, she decided to make a run for it, thinking that by doing so she might survive or, if not, at least her body would be recovered.

Ayers made it to the door of the pawn shop and went inside. McDonald got into the driver's seat of Ayers's car, and drove out of the parking lot. Immediately upon seeing Ayers running into the shop, Glover slid over to the driver's seat of defendants' car and drove out of the parking lot. Ayers saw the defendants drive away in the two cars, and told the pawn shop manager to call 911. Shortly thereafter, Memphis police officers arrived and took Ayers's statement.

Later that same evening, Ayers received a telephone call at her home from Shirley Towers, who identified herself as McDonald's mother. Ms. Towers stated that her son had come to her home that evening in Jackson, Mississippi, driving a black Acura Integra. She stated that McDonald had dumped papers belonging to Ayers in her garbage, and had given her wedding rings. Ayers called the Jackson Police Department, and was directed to the Memphis Police Department.

The following day, Ayers identified the defendants' photographs from a photo spread at the Memphis police station. Memphis police officers contacted Ms. Towers, and she gave them the information that she had given to Ayers. The officers contacted the Hinds County Sheriff's Department, located in Jackson, Mississippi, in order to obtain assistance in locating the defendants.

Officers from the Hinds County Sheriff's Department began investigating the incident. A deputy went to Ms. Tower's home, where she gave him items of Ms. Ayers's property. Ms. Towers agreed to take the deputy to a residence in Jackson where she believed her son would be found. When they arrived at the property, the deputy observed Ms. Ayers's vehicle parked in the driveway, and called for backup. As he was waiting for backup to arrive, he observed McDonald get into the car and drive away from the residence.

The deputy began to follow McDonald, and eventually apprehended him after a car chase lasting approximately thirty minutes and involving several police cars. Glover was subsequently taken into custody without incident.

A review of the evidence as a whole leads us to conclude that the government presented sufficient evidence from which a rational trier of fact could have found the essential elements of carjacking and, therefore, the weapons crime, beyond a reasonable doubt. Accordingly, we reject Glover's first claim, and move to her second.

**B. Expert Testimony**

We review the admissibility of expert testimony for an abuse of discretion. *See United States v. Harris*, 192 F.3d 580, 588 (6th Cir. 1999). Even if the district court abuses its discretion in this regard, a conviction will not be reversed on that basis unless the "substantial rights" of a party are affected. *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993).

In order for a defendant to be convicted of carjacking, the government must prove that the defendant (1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation. *See* 18 U.S.C. § 2119. Thus, an essential element of carjacking which the government had to prove was that the victim's vehicle had traveled in interstate or foreign commerce. *See United States v. Morgan*, 238 F.3d 1180, 1186 (9th Cir. 2001). In the court below, the government chose to prove this element by showing, through expert testimony, that the vehicle was manufactured outside the State of Tennessee.

In order to establish the place of manufacture of the victim's car, the government called as a witness Agent Thomas Zimmer of the National Insurance Crime Bureau ("NICB"). Agent Zimmer testified that the NICB serves as the link between law enforcement and the insurance industry in the investigation of fraud, vehicle theft, and vehicle identification, and provides technical services to law enforcement. He testified that his job includes examining vehicles and providing technical information to law enforcement agencies and officers. He testified that his

After viewing the record as a whole, we conclude that McDonald's convictions are supported by substantial and competent evidence.

## 2. *Defendant Glover*

Glover also contends that there was insufficient evidence to support her conviction for carjacking.[1] Glover argues that, while she did participate in a robbery of the victim, the evidence demonstrates that she had no intent to commit a carjacking. Glover points to the fact that she left McDonald with the victim and got into the *passenger's seat* of the defendants' vehicle. She contends that if she had intended that McDonald take the victim's vehicle, she would have gotten into the driver's seat of the defendants' vehicle.

While the evidence of Glover getting into the passenger seat of her vehicle may give rise to an inference that she expected McDonald to join her in their vehicle, it also, as the district court noted in rejecting Glover's motion for acquittal, could give rise to the inference that Glover simply was waiting in that seat until McDonald succeeded in stealing the victim's car. This inference is supported by the evidence that Glover assisted McDonald in robbing and quieting the victim, then telling McDonald, who was holding a weapon to the back of the victim's neck, to "do what you have to do." We note that such a statement, in this context, certainly may give rise to an inference that Glover intended that McDonald should seriously harm or kill the victim if necessary to steal the victim's vehicle. As further evidence of Glover's intentions, she moved immediately into the driver's seat of her vehicle when the victim ran past, and followed McDonald from Memphis to Jackson, Mississippi.

---

[1]Glover asks the Court, upon a finding that there is insufficient evidence to support her conviction for carjacking, to dismiss her conviction for carrying and use of a firearm during and in relation to a crime of violence.

On September 23, 1998, McDonald and Glover were indicted by a federal grand jury sitting in the Western District of Tennessee in a two-count indictment. Count I of the indictment alleged carjacking, in violation of Title 18 U.S.C. § 2119; Count II alleged carrying and use of a firearm during and in relation to a crime of violence, in violation of Title 18 U.S.C. §§ 924(c) and 2.

Defendants were tried by a jury on April 6, 7 and 8, 1999. The jury issued a guilty verdict as to both defendants on both counts. The district court denied defendants' motions for judgment of acquittal. On July 12, 1999, McDonald was sentenced to 150 months as to Count I, and 60 months, to be served consecutively, as to Count II. Glover was sentenced to serve a term of imprisonment of 166 months as to Count I, and 60 months, to be served consecutively, as to Count II.

Both McDonald and Glover filed a timely notice of appeal with this Court. McDonald challenges the sufficiency of the evidence to support his convictions. Glover also challenges the sufficiency of the evidence to support her convictions, and additionally challenges the district court's ruling on an evidentiary issue.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In reviewing a conviction for sufficiency of the evidence, we view the evidence "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[W]e do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury." *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). The conviction will be upheld so long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Defendants were convicted of carjacking in violation of 18 U.S.C. § 2119(1), which states as follows:

Whoever, with the intent to cause death or serious bodily harm, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall be fined under this title or imprisoned not more than 15 years, or both . . . .

The Supreme Court recently addressed the issue of whether § 2119 requires the government prove that the defendant had an unconditional intent to kill or harm in all events, or whether it merely requires proof of an intent to kill or harm if necessary to effect a carjacking. *See Holloway v. United States*, 526 U.S. 1, 3 (1999). The Court held that the latter was all that was required. *See id*. Therefore, in order to satisfy the intent requirement of § 2119, the government need only prove "that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)." *Id*. at 12.

### 1.  *Defendant McDonald*

McDonald argues that the evidence was insufficient to prove beyond a reasonable doubt that he intended to cause death or serious bodily harm at the time he took possession of Ayers's vehicle. He contends that the evidence demonstrated only that he used the weapon to frighten the victim. McDonald suggests that, because he had the opportunity to inflict serious injury or kill the victim, but did not do so, he did not have the requisite intent.

Because Ayers surrendered her vehicle without McDonald attempting to inflict, or actually inflicting, serious bodily harm, the government was required "to prove beyond a reasonable doubt that [McDonald] would have at least attempted to seriously harm or kill [Ayers] if that action had been necessary to complete the taking of the car." *Holloway*, 526 U.S. at 11-12. McDonald correctly notes that proof that

the defendant made "an empty threat, or intimidating bluff" is insufficient to satisfy the specific intent element of § 2119.

McDonald does not dispute that he held a gun to the back of the victim's head and instructed her to move over in the seat, as he was going to take her somewhere. Moreover, he concedes that he threatened the victim repeatedly that she should either shut up or he would kill her. We believe that such evidence, under our standard of review, is sufficient to support McDonald's conviction. *See, e.g., United States v. Malone*, 222 F.3d 1286, 1292 (10th Cir. 2000) (finding sufficient evidence of requisite intent under § 2119 based on facts that the defendants threatened the victim with loaded guns and forced her out of car at gunpoint); *United States v. Lake*, 150 F.3d 269, 272 (3d Cir.1998) (finding sufficient evidence of the requisite intent based on facts that the defendant waived a real gun in front of victim and ordered her to surrender her keys, and when she hesitated placed the gun close to her head and asked again for the keys); *United States v. Williams*, 136 F.3d 547, 552 (8th Cir.1998) (concluding jury could infer necessary intent based on the facts that the defendant pointed a revolver at the driver's son and ordered the driver and her son out of the car); *United States v. Kimble*, 178 F.3d 1163, 1166 (11th Cir.1999) (finding requisite intent where defendants wielded guns and pointed them at several employees and hitting one employee in the face when he failed to comply, despite one defendant's statement that no one would be hurt if they did what he said).

We reject McDonald's contention that the requisite intent is not shown where the defendant has not actually seriously injured or killed the victim. The fact that McDonald did not shoot Ayers as she fled does not mean that, at the moment he demanded and took control over her car that he did not possess the intent to seriously harm or kill the driver if necessary to steal the car. Rather, this fact simply demonstrates that the use of such force was not necessary in this instance. The victim need not suffer actual serious bodily injury in order to establish the specific intent element of § 2119.