Robert Holmes Bell of the United States District Court for the Western District of Michigan.

**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Robert SMITH and Christopher Hicks,
Defendants—Appellants.**

No. 00–5640, 00–5685.

United States Court of Appeals,
Sixth Circuit.

Dec. 18, 2001.

Before COLE and SUHRHEINRICH, Circuit Judges; and COLLIER,* District Judge.

COLLIER, District Judge.

Appellants Robert Smith ("Smith") and Christopher Hicks ("Hicks") appeal their convictions and sentences for attempted bank robbery, 18 U.S.C. § 2113(a), (d); use of a dangerous weapon during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii); and possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). Smith and, by adoption, Hicks claim their convictions rest on insufficient evidence. Hicks raises five additional claims of error by the district court—constructive amendment of the indictment, improper admission of expert testimony, improper admission of photographic evidence, improper jury instruction on flight, and failure to grant a mistrial or severance. With the exception of the last one, Hicks's claims of error apply equally to Smith and will be construed as adopted by him. Because we find no merit in Smith's and Hicks's arguments, we AFFIRM.

I.

On November 1, 1999, Robert Smith, Christopher Hicks, and Terrence Booker traveled together from Toledo, Ohio, to Winchester, Kentucky. They were accompanied by Smith's and Hicks's girlfriends. After they arrived in Winchester the next day, the group checked into a motel. That evening, Smith, Hicks, and Booker went to a local K–Mart department store and purchased camouflage overalls, gloves, and ski masks. Smith also bought a black sweatshirt. According to Booker, the men had agreed to rob a bank and, at some point on November 3, 1999, selected the Traditional

* The Hon. Curtis L. Collier, United States District Judge for the Eastern District of Tennes-   see, sitting by designation.

Bank in Winchester as their target. A witness saw the men parked near the bank that evening.

On the morning of November 4, 1999, Smith and Hicks told their girlfriends to prepare to leave and then loaded the car. According to Booker, the three men removed three firearms, including a .357 magnum, from their belongings and drove to the bank. Hicks donned the camouflage overalls on the way; Smith was wearing the black sweatshirt. Booker and Hicks also had walkie-talkies. Each man was armed.

At the bank, Booker remained in the car while Smith and Hicks, armed and wearing ski masks and gloves, approached the entrance. At approximately 7:25 a.m., Wanda Frye, a bank employee, arrived at the bank. Smith and Hicks forced her to let them in. Once inside, one of them said to Booker over the walkie-talkie, "We're in." The men then ordered Frye to open the vault, threatening to kill her if the police arrived. Despite the threat, Frye activated a silent alarm. When Judy Milton, another bank employee, entered the bank shortly thereafter, the men ordered her to assist Frye. They threatened to kill her if she and Frye failed to open the vault.

In the meantime, a police car arrived. After alerting Smith and Hicks to the presence of the police, Booker abandoned the car and ran to a nearby apartment complex where he was later arrested. He left a .38 caliber gun in the car and threw his walkie-talkie in a nearby dumpster. Smith and Hicks ran out of the bank past the bank's drive-through service window. The bank's video surveillance system captured the men removing their masks as they passed the service window.

Smith and Hicks ran past a fence toward a nearby car wash and then a gas station. A witness saw Smith discard his sweatshirt near the car wash. At the gas station, the men asked the manager to call them a cab, which he did. A cab came and took the men to their motel. There they informed the women Booker and the car were gone. Smith called the owner of the car, who was in Toledo, and instructed her to report the car as stolen. Hicks called another cab. When the second cab arrived, Smith, Hicks, and the women got in and asked to be taken to the bus station. The driver, who was a police officer, promptly arrested the men.

The police recovered a pillow case near the vault; a ski mask outside the bank; a black sweatshirt near the carwash; and a second ski mask, a washcloth, a walkie-talkie, and a .357 magnum near the fence. The pillow case and washcloth matched those missing from Booker's motel room. Booker identified the .357 magnum as one of the guns the men had at the motel prior to the robbery. The police also found a bag from K-mart and merchandise tags for the black sweatshirt, gloves, and ski masks in Booker's room. The police recovered Booker's gun, a white ski mask, a ball cap, and photographs of Smith and Booker in the car abandoned near the bank.

Hicks, Smith, and Booker were indicted on November 18, 1999. The government successfully moved to sever Booker's trial. Booker was convicted of attempted bank robbery and use of a dangerous weapon during a crime of violence. Booker testified at Hicks's and Smith's trial about the details of the robbery. After Smith's attorney queried Booker about his prior conviction for the same bank robbery, Hicks's attorney asked some follow-up questions and then unsuccessfully moved for a mistrial or severance. Both the girlfriends identified Appellants in still photographs reproduced from the bank's surveillance videotape. Witnesses identified the recovered black sweatshirt as Smith's. A police laboratory technician testified hair samples taken from Appellants were "similar in

color and microscopic characteristics" to hairs found in the ski masks recovered near the bank. The jury returned a guilty verdict as to all counts. Hicks's and Smith's motions for judgment of acquittal and for a new trial were both denied. The judgment was issued on April 28, 2000 and entered on May 2, 2000.

## II.

### A. Sufficiency of the Evidence

■ Appellants first challenge the sufficiency of the evidence supporting their convictions of bank robbery, use of a dangerous weapon during a crime of violence, and possession of a firearm by a felon.[1] Appellants claim the government offered insufficient evidence to support their convictions because it offered no eyewitnesses. Hence, Appellants contend the district court erred in denying their motion for judgment of acquittal.

In reviewing challenges regarding the sufficiency of the evidence presented to the jury, we are limited to ascertaining whether, viewing the evidence in the light most favorable to the government, *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir.2000), "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). The uncorroborated testi-mony of an accomplice may support conviction. *United States v. Frost*, 914 F.2d 756, 762 (6th Cir.1990). So may circumstantial evidence, if "the judgment is ... supported by substantial and competent evidence upon the record as a whole." *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir.1989).

While Appellants are correct there was no eyewitness other than Booker who could identify them as the bank robbers, they are incorrect his testimony is insufficient. Booker's testimony about the details of the robbery, alone, suffices to support their convictions. So does the circumstantial clothing evidence—Appellants were seen purchasing camouflage clothing, a black sweatshirt, and ski masks; they left the tags from those purchases at the motel; the bank employees' testified both assailants were wearing ski masks, one wore camouflaged clothing, and the other a black sweatshirt; and the police discovered discarded ski masks outside the bank and a discarded black sweatshirt near the carwash. Moreover, photographic evidence identified by the girlfriends places Appellants at the bank. Finally, Booker's testimony, the employees' testimony, and the recovered weapons combine to provide sufficient proof Appellants possessed firearms during the bank robbery.

---

**1.** Bank robbery includes the attempt to take by force and violence or intimidation, from the person or presence of another, any property or money in the care, custody, control, management, or possession of any bank. 18 U.S.C. § 2113(a). Section 2113(d) provides for an additional penalty whenever a defendant commits a bank robbery using a dangerous weapon or device.

Section 924(c) provides for an additional penalty whenever a defendant uses, carries, or possesses a "firearm" during and in relation to any crime of violence. For purposes of § 924(c), the term "firearm" is defined as

"(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." *United States v. Mack*, 258 F.3d 548, 552 (6th Cir.2001) (citations omitted).

Section 922(g)(1) criminalizes the knowing possession a firearm by a person who has been convicted in a court of the United States, or of a State or any political subdivision thereof, of a felony, if the firearm was in or affecting interstate or foreign commerce.

Viewing the overwhelming evidence in the light most favorable to the government, we find a rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt.[2] Accordingly, the district court did not err in denying Appellants' motion for judgment of acquittal.

### B. Constructive Amendment of the Indictment

■ Appellants next contend the district court constructively amended the indictment when it instructed the jury it could convict them of use and possession of a "firearm" rather than a .357 magnum. We review whether a district court amended an indictment under the de novo standard:

> There are two types of modifications of an indictment—an amendment and a variance: "An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." An amendment is considered *per se* prejudicial while a variance is not reversible error unless the accused has proven a prejudicial effect upon his defense. "[A] variance rises to the level of a constructive amendment when 'the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been

convicted of an offense other than that charged in the indictment.'"

*United States v. Robison,* 904 F.2d 365, 369 (6th Cir.1990) (citations omitted). Hence, the alteration of an essential element of an offense charged constitutes an impermissible amendment. But a factual difference between the evidence presented at trial and that alleged in the indictment will constitute an impermissible variance only if it so affects the defendant's substantial rights as to be prejudicial. *See id.; United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

The specific type of firearm used or possessed during a crime of violence is not an essential element of the offense charged under § 924(c). *See Robison,* 904 F.2d at 369. Likewise, the United States Courts of Appeal for the Fifth and Tenth Circuits have held the specific type of firearm possessed by a felon is not an essential element of the offense charged under § 922(g)(1). *See United States v. Munoz,* 150 F.3d 401, 417 (5th Cir.1998) (the gauge of a gun is not an essential element of § 922(g)(1)); *United States v. Hamilton,* 992 F.2d 1126, 1129–30 & nn. 5–6 (10th Cir.1993) (the type of firearm is not an essential element of § 922(g)(1)). Joining the Fifth and Tenth Circuits, we hold the logic of *Robison* should extend to § 922(g)(1).

Accordingly, because the instruction about the type of firearm used in the robbery did not concern an essential element of the offenses charged, we find the district court did not constructively amend counts two, three, or four of the indictment. We further find any variance there may have been between the indictment and the jury charge was neither material

---

**2.** Because this was not a case in which the defendants' theory of innocence and the government's theory of guilt were even close to

equal, we reject out of hand Appellants' argument based on *United States v. Sanchez,* 961 F.2d 1169 (5th Cir.1992).

nor prejudicial. Because the jury instruction concerned a nonessential element, it cannot be said to be material. Because Appellants' defenses were predicated on their innocence, the jury instruction in no way can be said to have had a prejudicial effect on their defense—if they did not commit armed bank robbery, they did not possess either a .357 magnum or any other firearm during a crime of violence.

## C. Testimony on Hair Samples

■ Appellants complain the district court abused its discretion when it allowed a police laboratory technician to testify as an expert about her comparison of hair samples using a microscope. They contend the witness's testimony should not have been allowed under the *Daubert* standard. We review the admissibility of expert testimony for an abuse of discretion. *See United States v. Glover*, 265 F.3d 337, 343 (6th Cir.2001). Even if the district court abuses its discretion in this regard, a conviction will not be reversed on this basis unless the "substantial rights" of a party are affected. *Id.*

The government called Tracy Phillips to testify about the similarity between Hicks's hair and hair found in a ski mask found near the bank. Phillips testified about her employment, education (B .A. in forensic science), training (one symposium and in-house training), and prior court expert testimony (once). Based on this testimony, the district court qualified her as an expert pursuant to Rule 702 of the Federal Rules of Evidence over Appellants' objection .[3] The district court did not conduct a formal *Daubert* hearing.

Phillips acknowledged hair comparison was a visual examination that could be subjective. Appellants objected to Phillips's testimony because she did not explain the percentage of similarity between the hair samples or the method of examination she used. The district court overruled the objections, stating Phillips's testimony "would go more to the weight" because the comparison, although it had been accepted previously, was "not an exact science" and explaining the method was the "comparison microscope" method.

On appeal, Appellants state the district court should not have allowed Phillips's testimony about the microscopic comparison she undertook. Even if the district court had erred in allowing Phillips's cumulative testimony, such error was harmless in the face of the overwhelming and diverse evidence supporting Appellants' convictions.

## D. Still Images Derived from Videotape

■ Appellants argue the district court abused its discretion by admitting still images ("stills") derived from the bank's surveillance videotape.[4] Appellants contend the stills were not the "best evidence" of the images captured on the videotape. While they concede some of the stills were authenticated by Ms. Frye, one of the bank employees, they suggest others lacked authentication and could therefore contain altered images.

Evidentiary decisions are reviewed for abuse of discretion. *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir.1990).

---

**3.** "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702.

**4.** The images were created by photographing the videotape as it played on a monitor and by digitally transferring the images from the videotape to a computer file.

Photographs are admissible evidence if the content is authenticated. *See* Fed.R.Evid. 901. To prove the content of a photograph, the original is required except as provided by the Rules. *Id.* 1002. "Photographs" include videotapes. *Id.* 1001(2). "A duplicate is admissible to the same extent as an original unless (1) a genuine issue is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." *Id.* 1003. "A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original." *Id.* 1001(4). Hence, still photographs made from surveillance videotapes are admissible. *Accord United States v. Perry*, 925 F.2d 1077, 1082 (8th Cir.1991).

Appellants do not challenge the authenticity of the original videotape. Likewise, because they concede the authenticity of at least some of the images reproduced, they fail to show how the court's decision to admit the stills was unfair. Under these circumstances, the stills—both the photographs made from the playback monitor and the digital transfers created electronically—are admissible. Accordingly, we find no basis on which to conclude the district court abused its discretion in admitting the stills.

### E. Flight Instruction

■ Appellants contend the district court should not have given a flight instruction because there was insufficient evidence to support the inference of guilt the jury would need to draw from the instruction. A jury may consider flight in its deliberations if it may reasonably draw a four-part chain of inferences from the evidence: (1) from the defendant's behavior, flight, (2) from the flight, consciousness of guilt, (3) from consciousness of guilt, consciousness of guilt concerning the crime charged, and (4) from consciousness of guilt concerning the crime charged, actual guilt of the crime charged. *United States v. Dillon*, 870 F.2d 1125, 1127 (6th Cir. 1989). The government offered significant evidence about Appellants' behavior supporting the initial inference: packing their car at the motel early on the morning of the robbery, abandoning the camouflage clothing and their weapons in the vicinity of the bank, and summoning cabs to take them first to the motel and then to the bus depot.

We will reverse a judgment due to faulty jury instructions only if the instructions, "when viewed as a whole, were confusing, misleading, or prejudicial." *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72–73 (6th Cir.1990). Because we do not find the district court's flight instruction caused the entire jury charge to be confusing, misleading, or prejudicial, we find no basis for reversal here.

### F. Hicks's Motion for Mistrial or for Severance

■ Finally, Hicks contends the district court abused its discretion in denying his motion for mistrial or severance after Booker admitted his conviction of the robbery.

The Court reviews a district court's denial of a motion for a mistrial or severance for abuse of discretion. *United States v. Wall*, 130 F.3d 739, 745 (6th Cir.1997); *United States v. Breinig*, 70 F.3d 850, 852 (6th Cir.1995). A mistrial or severance is warranted if there is some prejudice or unfairness to the defendant. *Breinig*, 70 F.3d at 853.

In this case, Hicks did not object when Smith announced he intended to impeach Booker by asking him about his conviction

of the robbery. On the contrary, Hicks ratified Smith's strategy by asking Booker what he got in exchange for his testimony. In a similar case, we found no prejudice when defense counsel likewise first failed to object to testimony by coconspirators about having pleaded guilty to an offense and then elicited additional facts about the coconspirators' incarceration. *See United States v. Breitkreutz*, 977 F.2d 214, 221 (6th Cir.1992) (noting "the government did not use the fact that [the witness] had pleaded guilty as substantive evidence of defendant's guilt"). Here, Booker's testimony about Appellants' actions was critical to the government's case; however, his testimony about his own conviction was not.

Because Smith's attempt to impeach Booker and Hicks's follow-up question about the circumstances of Booker's testimony in no way can be said to have prejudiced Hicks or rendered his trial unfair, we find there was no cause for a mistrial or severance. The district court did not abuse its discretion in declining to grant Hicks's motion for mistrial or severance.

### III.

For the foregoing reasons, we AFFIRM the district court's entry of the judgments of conviction.